

FILED
DISTRICT COURT OF GUAM

JUL 26 2005

MARY L.M. MORAN
CLERK OF COURT

Joseph Asano Quenga
    Petitioner,

    v.

United States of America
    Respondents,

05-00024

C.A. No:02-10426

Petition Pursuant to 28, U.S.C.
§1651 All Writs Act, 28 U.S.C.
§2255, Extraordinary Writs of
Error Coram Nobis/Audita Querela
Habeas Corpus 28, U.S.C. §2241

\* \* \* \* \* \* \*

Petitioner Quenga has filed a multi-jurisdictional petition for post-conviction relief for an unconstitutional federal sentence of 174-months he received, and is serving as a result of ineffective assistance of counsel. Petitioner Quenga being virtually indigent , federal prisoner, unschooled and unversed in the practices and procedures of the law, brings this multi-jurisdictional petition requesting relief from counsel's ineffiveness being denied his sixth (6) amendment right to effective assistance of counsel, and ineffective assistant of appellate counsel which resulted in an unconstitutional sentence that he received. Petitioner brings this petition (multi-jurisdictional under 28 U.S.C. §2241, petition for writ of habeas corpus; 28 U.S.C. §2255, motion to vacate; 28 U.S.C. 1651, All Writs Act, petition for writ of coram nobis and petition for writ of audita querela; and any other jurisdictional statute, or vehicle which the Court could use to recharacterize Quenga's petition in...

order to review it's merits and grant Quenga the lawful relief

he request. Quenga relies on the law that is cited in this petition pertaining to how the Court should treat his pro se petition and the Courts ability to recharacterize his petition to fit the proper jurisdictional vehicle in which to bring his claims and issues regarding his unconstitutional sentence which he received in an "unconstitutional" manner to the court for review.

Quenga maintains that his unconstitutional sentence must be changed through this court's granting him relief through this petition. Quenga presents to this court the following law in support of jurisdiction in this matter.

## MEMORANDUM OF LAW IN SUPPORT OF
## PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C.§2241

### JURISDICTION & VENUE

The petitioner pleaded guilty to an information charging him with felon in possession of firearm, in violation of title 18, United States Code Sections 922(g)(1) & 924(a)(2). The Court imposed a sentence of 174-months to be served. Petitioner brings this action under the savings clause of 28 U.S C. §2255, in the form of a petition for writ of habeas corpus under 28 U.S.C. §2241, on the grounds that his constitutional rights under the 5th and 6th amendments have been violated through ineffective assistance of counsel, and denied his sixth amendment right to trial by jury because of the fact that he was enhanced based on prior conviction(s) that were not presented to a grand jury and proven beyond a reasonable doubt, and ineffective assistance of appellate counsel.

2

Counsel's failure to investigate the facts, and appeal the

the Defendant's "unconstitutional sentence.

## ARGUMENT AND CITATION OF AUTHORITY

Article 1, Section 9, Clause 2 of the United States Con-
stitution and the savings clause of 28 U.S.C. §2255. motion to
vacate, give this court the jurisdiction to entertain petitioner
Quenga's petition for writ of habeas corpus pursuant to 28
U.S.C. §2241.

## BACKGROUND OF HABEAS CORPUS

A prisoner's right to habeas corpus relief was written dir-
ectly into the U.S. Constitution in Article 1, Section 9, Clause
2, Suspension of Habeas Corpus, "The priviledge of the writ of
Habeas Corpus shall not be suspended, unless when in cases of
Rebellion or invasion the public Safety may require it".

In 1948, Congress devided the traditional prisoner's habeas
corpus writ into two sections of U.S. Code for purpose of judic-
ial efficiency. The first being 28 U.S.C. §2241, which states,
in part, (c) "The writ of habeas corpus shall not extent to a
prisoner unless (1) he is in custody under or by color of the
authority of the United States or is committed for trial be-
fore some court thereof; or (2) he is in custody for an act done
or omitted in pursuant of an Act of Congress, or an order, proc-
ess, judgement or decree of a court or judge of the United States
or (3) he is in custody in violation of the Constitution or laws
or treaties of the United States".

3

Petitioner Quenga is in federal prison pursuant to an order of a U.S. District Court for an act committed against an Act of Congress and is in custody in violation of the Constitution and laws of the United States. Quenga has satisfied all of §2241 requirements being (1)(2)(3), of (c).

28 U.S.C. §2241 is to be used for matters other than those attacking a federal judgement or sentence, with the exception that it has been designated the proper vehicle to bring a claim under the "savings clause" of 28 U.S.C. §2255 to the court for proper relief. For attacking a federal sentence Congress created 28 U.S.C. §2255, and Congress, in it's foresight and wisdom, created the "savings clause of §2255, which states, "An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention".

This clause is what has been termed the safety valve which prevents an occurrance where, as in Quenga's case, the possibility of suspension of habeas corpus might occur, in violation of Article 1, Section 9, Clause 2, of the U.S. Constitution. Without the use of §2255's savings clause or safety valve, Quenga's Constitutional right to habeas corpus will, in effect, be suspended. In footnote number 5, Larson v. United States...

4

275 F. 2d. 673, at 676 (5th Cir. 1960), U.S. Supreme Court

Chief Justice Vinson opines in reviewing Section 2255,
"As stated in United States v. Hayman, and quoted in United
States v. Morgan,1954, 346 U.S. 502, 511, 74 S. Ct. 247, 252
98 L.E.d. 248. Nowhere in the history of Section §2255 do we
find any purpose to impinge upon prisoner's rights of collat-
eral attack upon their convictions".

"Theoretically, it habeas corpus is effective only against
judgements rendered without jurisdiction. But courts have so
expanded the common law concept of jurisdictional defects that
actually a prisoner can use the habeas writ against any judge-
ment which violates due process or fairness in criminal procee-
dings. In fact, recent decisions bypass the outmoded concept
of jurisdiction and treat directly the constitutional issues
involved.

Thus, the modern habeas writ and the motion under Section
§2255 are substantive equivalents". Due to ineffective ass-
istant of counsel Quenga admitted to his prior conviction's
and in the dismissal of his direct appeal thus, rendering his
dismissal of his direct appeal unknowing, and unintelligent.

Quenga does not "challenge his plea of guilt" he does
challenge his sentence and the fact that he was not afforded
his right to effective assistance of counsel, and effective
assistance of appellate counsel. The "savings clause" of
§2255 states, "An application for a writ of habeas corpus in
behalf of a prisoner who is authorized to apply for relief
by motion pursuant to this section, shall...

5

not be entertained if it also appears that the applicant
has failed to apply for relief, by motion, to the court which
sentence him". Quenga's unique situation within this matter
renders this highly applicable. One he is filing his §2241,
habeas petition in the same geographical jurisdiction as he
was sentence in. Therefore, the sentencing court is also the
custodial court, which allows the Court to entertain either
form of relief.

Also it is highly arguable that Quenga is unauthorized to
apply for relief pursuant to §2255. §2255 inadequate or ineff-
tive to test the legality of his detention. And Quenga waived
his right to challenge the conviction. Quenga's petition in
this matter proves beyond any argument or doubt that he has
received an "unconstitutional sentence" in an unconstitutional
manner. Therefore, being unauthorized and inadequate or ineffect-
ive under §2255. Petitioner Quenga is entitled to invoke the
"savings clause" of 28 U.S.C. §2255, giving this court jurisdict-
ion over this matter under 28 U.S.C. §2241.

## SAVINGS CLAUSE OF 28 U.S.C. §2255

Inadequate or ineffective-extraordinary circumstances:

"Nowhere in the history of §2255 has congress placed an
absolute bar on prisoner's habeas corpus rights to seek post-
conviction releif from an unconstitutional sentence received
in an unconstitutional manner resulting ia a serious miscarriage
of justice. Nowhere in the history of §2255 do we find any
purpose to impinge upon prisoners rights of collateral attack
upon their convictions." United States v. Hayman, 342 U.S. 205,
72 S. Ct. 263, 96 L ed. 232, at 241.

Congress restricted "but did not eliminate" the right of fed-
eral prisoner's to proceed under §2241(c)(3). See gen-
erally United States v. Hayman 342 U.S. 205, 210-19 72 S. Ct.
263, 267-72, 96 L.ed. 232 (1952) (detailing the history and
purpose of §2255. Section §2255 was not intented to limit the
collateral rights of federal detainees in any way.

It was simply designed to serve as a convenient substit-
ute for the traditional habeas corpus remedy. See Id. at 219,
72 S. Ct. at 272. Significantly, §2255 as originally enacted,
and as amended by the AEDPA, contains an explicit exception
to the general rule that a federal prisoner must use §2255
instead of seeking a writ of habeas corpus under §2241",
Triestman v. U.S., 124 F. 3d. 361, at 373 (2nd. Cir. 1997).

Section §2255 is either inadequate or ineffective to test
the legality or constitutionality of Quenga's sentence, there-
fore he is authorized by the savings clause of §2255, to ut-
ilize §2241 for his claims for relief. "In a case where the
§2255 procedure is shown to be "inadequate of ineffective" the
section provides that the habeas corpus remedy shall remain
open to afford the necessary hearing." United States v. Hayman,
342 U.S. 205, 72 S. Ct. 263, 96 Led. 232, at 244.

"Section §2255 explicitly states that federal prisoners
may resort to habeas corpus if, and only if, §2255 relief is
inadequate", In Re Hanserd, 123 F. 3d. 922, at 933 (6th Cir.,
1997). "Still, inadequate and ineffective" must mean something
or Congress would not have enacted it in 1948, and reaffirmed
it in the AEDPA.

7

"We now hold that that "something" is at the least, the set of cases in which the petitioner cannot, for whatever reason, utilize §2255, and in which the failure to allow for collateral review would raise serious constitutional questions". "And more generally, we encourage the district courts to continue to find that habeas corpus may be sought whenever situations arise in which a petitioner's inability to obtain collateral relief would raise serious questions as to §2255's constitutionality", Triestman v. U.S. 124 F. 3d. 361, at 376-77 (2nd Cir. 1997).

"Lorentsen is a federal prisoner. Section §2255 expressly provides that a federal prisoner may seek habeas relief if it "appears that the remedy by motion is inadequate or ineffective to test the legality of his detention". United States v. Lorentsen, 106 F. 3d. 278, at 279 (9th Cir. 1997).

Quenga is a federal prisoner and is unable to use §2255 because in his case it has been rendered inadequate or ineffective. The courts are not closed to a federal prisoner, who like Quenga finds himself in exceptional circumstances where his case demands justice and the failure to do so creates a miscarriage of justice which raises serious constitutional questions. "Nor, however, does it keep the courts closed in cases where justice would seem to demand a forum for the prisoners claim in so pressing a fashion as to cast doubt on the constitutionality of the law that would bar the §2255 petition.

In reaching this result, we therefore respect Congress intent to streamline collateral review and to discourage repetitive and piecemeal litigation, while at the same time we give ...

8

meaning to Congress express decision (reaffirmed in the AEDPA) to preserve habeas corpus for federal prisoners in those extraorinary instances where justice demands it. Cf. Schlup v. Delo, 513 U.S. 298, 322, 115 S. Ct. 851, 846-65, 130 Led. 2d. 808 (1995) (noting that in interpreting the law of collateral review, courts should "accommodate" both the systemic interests in finality...and conservation of judical resources, and the overriding individual interest in doing justice in the extraorinary case)" Triestman v. U.S., 124 F. 3d. 361, at 378, (2nd Cir. 1997).

"We suggested that the appropriate inquiry was whether the claimed error of law was " a fundamental defect which inherently results in a complete miscarriage of justice", and whether it...presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent. Id., at 428, 7 L.ed. 2d. 417 (internal quotation marks omitted)., Davis v. United States, 417 U.S. 333, 41 L. Ed. 2d. 109, 94 S.Ct. 2298 (1974).

The circumstances of Quenga's unconstitutional sentence given to him in a unconstitutional manner are certainly exceptional or extraordinary, and he has been prevented from direct appeal relief and has not been afforded collateral review in any manner. Quenga must be afforded some type of review to obtain relief from his unconstitutional sentence.

"We do not suggest that §2255 would be "inadequate or ineffective" so as to enable a second petitioner to invoke §2241 merely because that petitioner is unable to meet the stringent..

9

gatekeeping requirements of the amended §2255. Such a holding
would effectively eviscerate Congress's intent in amending
§2255. However, allowing someone in Dorsainvil's unusual posit-
ion that of a prisoner who had no earlier opportunity to chall-
enge his conviction...is hardly likely to undermine the gate-
keeping provisions of §2255." In Re Dorsainvil, 119 F. 3d. 245,
at 251 (3rd Cir. 1997).

"The Seventh Circuit in Davenport, suggested in dicta that
the savings clause might apply to some claims involving a "fund-
amental defect" in sentencing where the petitioner had not had
an opportunity to obtain judicial correction of that defect
earlier. See 147 F. 3d. at 611.

We need not decide whether the savings clause extends to
sentencing claims in those circumstances, or what a "fundamental
defect in a sentence might be." Wofford v. Scott, 177 F. 3d.
1236, at 1244-45 (11th Cir. 1999). "In interpreting the savings
clause, the Seventh Circuit in Davenport, looked to the essent-
ial function of habeas corpus.

It characterized that function as giving a prisoner a rea-
sonable opportunity to obtain a reliable judical determination
of the fundamental legality of his conviction and sentence."
"Davenport, 147 F. 3d. at 609. The court stated that a prisoner
who had a chance to raise the question at issue in his appeal
and his first §2255 petition had already had his reasonble opp-
ortunity" U.S. v. Barrett, 178 F. 3d. 34, at 51 (1st Cir. 1999).

It can be argued that Quenga is not authorized to proceed
under §2255, in the savings clause itself.

10

"An application for a writ of habeas corpus in behalf of
prisoner who is authorized to apply for relief by motion pur-
suant to this section, shall not be entertained if it appears
that the applicant has failed to apply for relief, by motion
28 U.S.C. §2255. Which if the court denies review under §2255
would effectively upsurp the statutory intent of Congress that
the petitioner be unthorized to seek habeas review under 28,
U.S.C. §2255.

HABEAS CORPUS 28 U.S.C. §2241(a)(b)(c)

Statutory provisions:

Under 28 U.S.C. 2241(a) this court "the district court" has

been given statutory authority to entertain and review a
(this) petition for writ of habeas corpus. Writ of habeas cor-
pus extends to the petitioner pursuant to 28 U.S.C. §2241, (c)
(1) (2) & (3) as the petitioner is in custody under the auth-
ority of the United States; and he is in custody pursuant to
a judgement of a court or judge of the United States; and he
is in custody in violation of the Constitution and laws of the
United States.

Thus, under these statutory provisions Quenga's petition
for writ of habeas corpus can be reviewed by this court.

Practical application:

In terms of new court decisions and in matters of general pra-
ctice there are no absolutely set guidelines for the applicat-
ion of habeas corpus, especially in a matter such as Quenga's.

This court in it's discretion, can address Quenga's petit-
ion for writ of habeas corpus, Althought the...

11

procedural bar may be raised in this case, the court in it's discretion can still address the merit's of the petition when it believes that doing so will best serve the interest of "judicial efficiency" conservation of judicial resources, and orderly and prompt administration of justice.

... "Id. at 379." Shaughnessy v. U.S., 93 F. Supp. 2d. 1195, at 1197 (D. Wyo. 2000), citing from U.S. v. Allen, 16 F. 3d 377 (10th Cir. 1994). Quenga has well established in this petition and through his cause and prejudice, due diligence, and miscarriage of justice portions of this memorandum that he has over come the procedural bar, shown due diligence in this matter, and the failure to correct his illegal sentence will result in a miscarriage of justice.

U.S. Law and justice dicate that Quenga must be given relief from his Unconstitutional sentence, it is just a matter of how it is done. Therefore, the willful failure of this court to assume jurisdiction will constitute a wanton waste of valuable judicial resources and willful perpetuation of the miscarriage of justice in this matter.

The fundamental purpose of habeas corpus is to correct an error that affects the duration of confinement. Quenga has overwhelmingly established that his unconstitutional sentence will severely affect the duration of his confinement. The Fifth, Circuit said about habeas corpus "In short, because the alleged error affects the duration of confinement, a section 2241, claim is more closely related to other habeas claims brought pursuant to sections §2254 and §2255 than claims...

12

challenging conditions of confinement". <u>Davis v. Fechtel</u>,
150 F. 3d. 486, at 490 (5th Cir. 1998). "that the essence of
habeas corpus is an attack by a person in custody upon the le-
gality of that custody, and that the traditional function of
the writ is to secure release from illegal custody." <u>Preiser,</u>
<u>v. Rodriguez,</u> 411 U.S. 475, at 484, 93 S. Ct. 1827, at 1833,
36 L ed. 2d. 439 (1973).

To correct the miscarriage of justice Quenga is experienc-
ing in this matter, the district court must hear the merits of
his case or the miscarriage of justice will forever go unresol-
ved. "Henceforth, in such cases a prisoner brings an action in
the nature of hebeas corpus or he brings no federal action at
all". <u>Id.</u> at 1843.

### CONSTITUTIONAL ISSUES (QUESTIONS)

Constitutional questions arise when habeas corpus may have
been suspended, depriving a prisoner from relief of constitut-
ional violations in his sentence and the manner in which he re-
ceived it. Especially when the results of the violations man-
ifest themselves in the prisoner's longer, harsher sentence
that creates a serious miscarriage of justice.

Quenga has undoubtably, received an unconstitutional sen-
tence in an unconstitutional manner, in violation of his sixth
amentment right to trial by jury, and his sixth amendment right
to effective assistance of counsel and effective assistance of
appellate counsel, that has resulted in his having been given
a substantially greater sentence which can easily be termed a
serious miscarriage of justice.

13

Failure to afford Quenga relief from the unconstitutional portion of his sentence he received in an unconstitutional manner would constitute "suspension" of habeas corpus, contrary to Article I, Section 9, Clause 2 of the United States Constitution. If this court denies jurisdiction of Quenga's petition, on all the avenues Quenga presents to the court to entertain his petition, then habeas corpus has been suspended which brings into question the continuing validity of 28 U.S.C. §2255.

This question has been brought to the attention of many other courts in the history of §2255, all of which have found an avenue to afford the prisoner relief, thus preventing the Constitutionality of §2255 to be called into question, because habeas corpus cannot be suspended.

Speaking of habeas corpus, the U.S. Supreme Court has said, "the writ today appears to extend to all dispositive constitutional claims presented in a proper procedural manner". See McCleskey v. Zant, 499 U.S. 467, at 479, 111 S. Ct. 1454, 113 Led. 2d. 517, at 534 (1991). Quenga has made his dispositive constitutional claims in a proper procedural manner cognizable under habeas corpus.

The U.S. Supreme court has further held, "There being no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for a writ of habeas corpus, the power and inquiry on federal habeas corpus is plenary, and petitioners in habeas corpus proceedings are entitled to a full opportunity for presentation of the relevant facts". Harris v. Nelson, 394 U.S. 286, 89 S. Ct. 1082, 22 Led. 281.

"The question of an unlawful sentence is never barred". See, Rosenberg v. U.S. 346 U.S. 273, at 312, 97 Led. 1607, 73 S. Ct. 1152 (1953). "The Supreme Court has constantly emphasized the fundamental importance of the writ of habeas corpus in our constitutional scheme, and the Congress has demonstrated its solicitude for vigor of the Great Writ.

The Court has steadfastly insisted that "there is no higher duty than to maintain it unimparied." Bowen v. Johnston, 306 US 19, 26, 83 L ed. 455, 461, 59 S. Ct. 442 (1939); Johnson v. Avery, 393 U.S. 483, at 485, 89 S. Ct. 747, 21 Led. 2d. 718 at 721 (1969). The failure to afford Quenga the relief requested within his petition will call into question the federal justice system and the integrity of the federal courts. It is certain that Quenga suffers from serious violations of his constitutional rights. Those being his right to triaL by jury in violation of his sixth amendment, ineffective assistance of counsel, ineffective assistant of appellate counsel due process and equal protection of the law under the fifth amendment.

DUE PROCESS OF THE LAW:

Quenga was deprived of his right to appeal his unconstitutional sentence which violates his right to due process. "Even if the Due Process and Equal Proctection Clauses of the Constitution do not require the government to create a statutory system of appellate rights, these constitutional clauses do require the government, once it has decided voluntarily to create such a system (as it has), to allow unfettered and equal access to it." See U.S. v. Melancon, 972 F. 2d. 566, at 577 (5th Cir. 1992).

See generally Burns v. United States, (1991) 501 U.S. 129, 115

Led. 2d. 123, 111 S. Ct. 2182.  Petitioner Quenga could
cite further case law in support of his claim that his due
process rights have been violated, but in the interests of cons-
ervation of space within his petition he omits them at this time.

EQUAL PROTECTION OF THE LAW:

Failure to afford Quenga the relief he seeks in this petit-
ion constitutes a violation of his right to equal protection of
the law. The Congress, in it's enactment of the sentencing Reform
Act of 1984 sought to relieve the great disparties of the pre-
vious laws and reduce the litigation of the magnitude of indiv-
iduals who were given disparate sentences. "The Sentencing Re-
form Act of 1984 revolutionized the manner in which district
courts sentence persons convicted of federal crimes". Burns v.
United States, (1991) 501 U.S. 129, at 132, 115 Led. 2d. 123
at 129, 111 S. Ct. 2182.

Congress intented that this new law of sentencing be applied
to all federal prisoners since it's enactment and would there-
fore end the previous disparity of sentences. To apply the U.S.
Sentencing Guidelines to some prisoners, and not to others,
violates the Constitutions equal protection Clause.

Quenga has a Constitutional right to expect a sentence pro-
perly calculated under the guidelines. Quenga's sentence was in-
creased based on "prior convictions, which resulted in a much
higher sentence for Quenga. Failure to grant Quenga the relief
he request within this petition will result in a disparity in
his sentence and a violation of his equal protection of the law
rights.

16

Moreover, the mandatory guideline sentencing system created by the Sentencing Reform Act of 1984 creates such expectations that a defendant enjoys a constitutionally-protected liberty interest in being sentenced according to the guidelines. U.S. v. Melancon , 972 F. 2d. 566, at 577 (5th Cir. 1992) See generally Burns v. United States, (1991) 501 U.S. 129, 115 Led. 2d. 123, 111 S. Ct. 2182.

## JUDICIAL REVIEW AND A DETERMINATION OF THE MERITS ON THE INADEQUATE OR INEFFECTIVENESS OF §2255 IS NECESSARY.

The court is required to rule on the mertis of Quenga's claim that §2255 is anadequate or ineffective. "Although we have not defined precisely what renders the §2255 remedy inadequate or ineffective, see United States v. Pierro, 104 F. 3d. 297, 299, (9th Cir,. 1997), the statute specifically contemplates that such instances  may arise. Where a petitioner claims that §2255 provides an ineffective remedy, the district court in which the petition is brought is required initially to rule whether a §2241 remedy is available under the savings clause". Hernandez, v. Campbell,  204 F. 3d. 861, at 866 (9th Cir. 2000).

The court must determine whether Quenga may proceed under §2241.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. §2255.

### JURISDICTION & VENUE

Petitioner Quenga plead guilty to an information charging him with felon in possession of firearm, in violation of Title 18, United States Code, Sections 922(g)(1) & 924 (a)(2). resulting in a sentence of 174-months, and enhanced because of two other prior felony convictions.

The court also imposed a 36-months term of supervised release. Petitioner Quenga brings this action under 28 U.S.C. §2255 (4) which states, "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States...or, is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence...A one year period of limitation shall apply to a motion under this section.

The limitation period shall run from the latest of (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. Quenga has been enahnced because of prior convictions. which occurred in violation of his sixth amendment right to (effective assistance of counsel), his fifth amendment right to due process of the law, and failure to correct these violations would constitute a further Constitutional violation of Quenga's fifth amendment right to equal protection of the law.

The combination of the above issues constitutes serious Constitutional claims to correct the illegal sentence through the colateral attack on his sentence which is cognizable under §2255.

## WAIVER OF RELIEF UNDER §2255 AS PROCEDURAL BAR:

Upon advice of his attorney Quenga entered into a plea agreement with the government. Quenga did specifically retain the right to effective assistance of counsel, and the...

right to direct appeal under 18 U.S.C. §3742. Quenga asserts
that his actual claims is cognizable under 18 U.S.C. §3742 which
specifically retained all his rights to assert. Quenga contends
that he specifically advised counsel to appeal his sentence. As
he was waiting for a response from counsel he never received one.

Counsel finally responded to Quenga's request by mailing
Quenga a motion that he prepared a (motion on Quenga's behalf to
withdraw his appeal.) Quenga was told by counsel that to just
sign the motion at this time, just for now, was his words. Quenga
signed thinking that counsel would file an appeal brief on a late-
er date.

## ARGUMENT AND CITATION OF AUTHORITY

Petitioner Quenga specifically retained the right to counsel.
The U.S. Supreme Court has held that assistance of counsel must
be effective assistance, or it is considered no assistance of
counsel. "To prosecute the appeal, a criminal appellant must face
an adversary proceeding that like a trial is governed by intricate
rules that to a layperson would be hopelessly forbidding.

An unrepresented appellant like an unrepresented defendant
at trial is unable to proctect the vital interests at stake. To
be sure, respondent did have nominal representation when he brought
this appeal. But nominal representation on an appeal as of right
like nominal representation at trial does not suffice to render
the proceedings constitutionally adequate; a party whose counsel
is unable to provide effective representation is in no better
position than one who has no counsel at all". Evitts v. Lucey,
469 U.S. 387, at 396, 105 S. Ct. 830, 83 Led. 2d. 821, at 830.

19

Mr. Quenga claims ineffective assistance of appellate counsel and because counsel decieved him into signing the "withdraw" of his appeal prevented him from filing his direct appeal. Mr. Quenga specifically told counsel to file the appeal. After being instructed to do so by Quenga.

Quenga contends if counsel felt that to file an appeal on his behalf would have been without "merit" counsel should have filed an Anders Brief to withdraw. "The Constitutional Right to counsel requires that on an indigents first appeal from his conviction court-appointed counsel must support the appeal to the best of his ability, requesting permission to withdraw only if he finds the case to be wholly frivolous in which event he must file a brief referring to anything in the record that might arguably support the appeal". Anders v. California, 386 U.S. 738, 18 Led. 2d. 493, 87 S. Ct. 1396.

"A defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice (2), and counsel's failure to do so cannot be considered a strategic decision". Roe v. Flores-Ortega, (2000) 145 Led. 2d. 985.

"We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. When counsel fails to file a requested appeal a defendant is entitled to a new appeal, without showing that his appeal would likely have had merit." See Roe v. Flores-Ortega, (2000) 145 Led. 2d. 985.

20

Quenga, like Lucey, had nominal representation at (sentencing)
and on appeal or in Quenga's case the failure to appeal.
Such nominal representation can be nothing but ineffective in
Quenga's case, and therefore, unconstitutional. Quenga has
proven this in his petition for post-conviction relief. Quenga
has established in the facts of the case, that his attorney
was deficient in his performance in the following manner:
(1) He provided erroneous and misleading advice which caused
Quenga to lose his right to a direct appeal.

(2) He failed to file the appeal when requested by Quenga.
In regard to ineffective assistance of counsel and plea agree-
ment waivers, the Fifth Circuit COurt of Appeals has held,
"However, we have previously noted, without deciding the issue
that waivers of rights to appeal may not apply to ineffective
assistance of counsel claims. See <u>United States v. Wilkes</u>, 20,
F. 3d. 651, 653 (5th Cir. 1994) noting that waiver of post-con-
viction relief in plea agreement may not apply to collateral
attacks based on ineffective assistance of counsel. <u>U.S. v</u>,
<u>Henderson</u>, 72, F. 3d. 463, at 465 (5th Cir. 1995).

Petitioner Quenga is not an attorney, has no training in
the law, and was completely unaware, when he "<u>signed the waiver</u>"
that counsel mailed to him to "<u>withdraw his appeal</u>". Quenga,
emphatically states that he advised counsel to appeal his case
at that time counsel stated that he would do so. Quenga waited
never heard from counsel. Quenga decided to write counsel a
letter in the event to find out if the briefs had been complete
at that time counsel mailed him the "motion for him to withdraw
his appeal".

21

Quenga was baffled because of the fact here he was thinking
that the appeal was in process when counsel never begin to
file any briefs on his behalf. Additionally Quenga also
found himself in what you call a catch (22) situation because
he was now timebarred and could not file a §2255, motion.

Counsel stated to Quenga that to just "withdraw the appeal".
Just for the timebeing. Giving Quenga the impression that he
(counsel) would file the appeal on a later date. Quenga states
that no one would knowingly place themselves in such a position,
certainly not himself. Indeed, had Quenga been aware of the
fact that once he signed a "motion to withdraw" his appeal, and
the consequences that resulted from the "withdraw" he would not
have voluntarily withdrew his appeal which therefore renders
his "withdraw of his direct appeal" unknowing and involuntary.

Quenga respecfully request that he be granted the opportunity
to re file his direct appeal in light of the Supreme Court's
ruling in <u>Booker</u>, and <u>Fan Fan</u>, that he was denied his sixth
amendment right to trial by jury. Quenga was enhanced based on
two prior conviction(s) these convictions being:

**Three counts of Burglary each as a 2nd Degree Felony
Case No. CF094-91, In the Superior COurt Territory
of Guam on April 27, 1992; and:**

**Two counts of Burglary Each as a 2nd Degree Felony,
Case No. CF150-91, In the Superior COurt Territory
of Guam on April 27, 1992.**

22

The sentencing Reform Act of 1984 was, required to be proven
by a jury by the 90% plus beyond a reasonable doubt stan-
dard. E.g. United States v. Fatico, 458 F. Supp. 388 (E.D.N.Y.
1978) (qualifying standards). Under the throw-away-the-key
draconian sentences of the "war on Drug's" sentenced under
unconstitutional applications contrary to their Sixth Amendment
protections, Booker's holding is retroactive, contrary to
Eleventh Circuit holdings.

Petitioner does not deny that retroactivity for non-final cases
still on direct review holds no problem, as the Booker, Court
so stated relying on Griffith v. Kentucky, 479 U.S. 314, 328
(1987); However there is also no problem for habeas corpus
§2255 motions. See Schriro v. Summerlin, 542 U.S. ___159,
Led. 2d. 442 (2004), which provides compelling support for
Booker's retroactivity to initial habeas petitions.

Although the Supreme Court in Summerlin, rejected retroac-
tivity of its new procedural rule announced to Ring v. Arizona,
536 U.S. 584 (2002) (holding a jury, not a judge, must make
the findings necessary to impose the death penalty), it did
so because-the possibility of inaccuracy was minimal in that
both fact finders there were required to use the same "beyond
the reasonable doubt standard. Pre-Booker, on the other hand,
judges determined sentence-enhancement facts by a preponderence
of the evidence. Post-Booker, those facts must be both deter-
mine by a jury and proven beyond a reasonable doubt.

The reasonable doubt standard is a prime instrument for
reducing the risk of convictions resting on factual error.
The standard provides concrete substance for the...

presumption of innocence-that bedrock axiomatic and elementary

pronciple whose enforcement lies at the foundation of

the administration of our criminal law". Because the found-

ation of <u>Booker</u>'s new rule of constitutional law rest on

both the <u>Apprendi</u> due process doctrine and the <u>In re Winship</u>,

Sixth Amendment right to a jury trial with respective beyond

a reasonable doubt proff standards, retroactivity to initial

habeas corpus petitions are despositive.

First, the remedial severing and excising part of the

Federal Sentencing Act of 1984, akin to legislating See e.g.

<u>Freeborn v. Smith</u>, 69 U.S. 160, 168 (1865), the Supreme Court

in <u>Booker</u> modified the Federal Sentencing Guidelines <u>nunc pro</u>

<u>tunc</u> Tō their November 1, 1987 effective date:

> "We answer the question of remedy by finding
> the provision of the federal sentencing stat-
> ute that makes the Guidelines mandatory, 18,
> U.S.C. § 3553(b)(1) (Supp. 2004), incompat-
> ible with today's constitutional holding. We
> conclude that this provision must be severed
> and excised. as must one other statute, §3742
> (e) Main Ed. and Supp. 2004), which depends
> upon the Guidelines mandatory nature. So mod-
> ified, the Federal Sentencing Act, see Senten-
> cing Reform Act of 1984, as amended, 18 U.S.C.
> §3551 et. seq.28 U.S.C. §991 et seq. makes
> the Guidelines effectively advisory."

Congress's power to make and amend remedial statutes re-

troactively. absent <u>Ex Post Facto</u> problems, is unquestionable.

See <u>Freeborn</u>, at 69 U.S. 168 ("We do not question the validity

of retrospective statutes that are purely remedial"); also

see <u>Frisbie v. Whitney</u> 76 U.S. 187 (1869).

Retroactivity, thereby, is simply a matter of intent. See,

e.g. <u>Rivers v. Roadway Express</u>, 511 U.S. 298, 311 (1994) ("The

question is whether Congress has manifested such an intent.")

Because in <u>Booker</u> it was the Supreme Court, not Congress, which

remedially modified the Sentencing Reform Act of 1984 as

Congress would have intented. Had Congress known in 1984 its

mandatory sentencing guidelines violated the Sixth Amendment

("We have examined the statute in depth to determine Congress

likely intent in light of today's holding").

Booker's indeputable intent to modify the guidelines <u>nunc</u>

<u>Pro tunc</u> is dispositive. Additionally, and moreover, even if

the Supreme Court did not assume Congress role in modifying

the Sentencing Reform Act of 1984, in construing and inter-

preting it as what "Congress would have intented had Congress

known its mandatory Sentencing guidelines violated the Sixth

amendment. The Supreme Court still necessarily, made <u>Booker</u>

retroactive.

The Eleventh Circuit has not examined the matter of ret-

roactivity in the light as set forth in this claim. Like

<u>Booker</u>, THE Supreme Court in <u>Patterson v. Mclean Credit Union</u>,

491 U.S. 164 (1989) interpreted a 123-year old statute differ-

ently than appellate courts had done since its enactment.

As regarding <u>Patterson</u>'s retroactivity, the Court stated:

> "A judicial construction of a statute is an
> authoritative statement of what the "Uncons-
> titutional" statute meant before as well as
> after the decision of the case giving rise
> to that construction. Thus, <u>Patterson</u> provides
> the authoritative interpretation of the phrase
> "make and enforce contracts" in the Civil
> Rights Act of 1866 before the congressional
> 1991 amendment (overruling Patterson) went
> into effect on November 21, 1991. (Patterson's)
> interpretation provides the base line for our
> conclusion that the 1991 amendment would be
> retroactive if applied to cases arising before
> that date."

Rivers at 511 U.S. 313. At bar, unlike Rivers, which rejected
retroactivity of the relevant Congressional Amendment be-
cause it was not so intended by Congress, the Supreme Court's
judicial construction or interpretation of the Sentencing Re-
form Act of 1984 is inescapable because "the court has no
authority to depart from the Congressional command setting the
(November 1, 1987) effective date of the law it has enacted."
Rivers, at 511 U.S. 313 n. 12.

Finally, the excising of §3553(b)(1) and §3742(e) restored
the original laws prior to the mandatory regime as though these
portions had never been enacted, Frost v. Corporation Comm'n
of Oklahoma, 278 U.S. 515, 526-27 (1929); Conlon v. Adamski,
F. 2d. 397, 399 (D.C. Cir. 1935), In re Winship, supra,
thus, restoring the law as it was prior to these statutes enact-
ment. The elementary rule of statutory construction is that a
void act, i.e. §3553(b)(1) and §3742(e), cannot operate to re-
peal a valid existing statute, and the law prior to that enact-
ment remains in full force and operation as if the repeal had
never been attempted." Weissinger v. Boswell, 330 F. Supp. 615,
(M.D. Ala. 1971).

These portions of the sentencing reform Act of 1984, under
their "mandatory" construction used relevant conduct, unfounded
by any jury, and without the burden of proff standard as sec-
ured within the Sixth amendment, enhancing his sentence, was
held unconstitutional by the Supreme Court, and any person who
has been previously convicted under it can procure his relief,
or release, as each case by case review would...

26

determine, by way of habeas corpus ·· <span>Ex Parte Sie-</span>

bold, 100 U.S. 371, 376-77 (1879). In Siebold, which dealt

with whether the exercise of congressional authority, under

the appointments clause, to vest appointment of inferior off-

icers in the President alone, or heads of departments was

within discretion of Congress , the Supreme Court admitted no

exceptions on interbranch appointments, overruling an enact-

ment as unconstitutional.

There the Court stated:

> "We are clearly of the opinion that the question
> raised in the cases before us is proper for con-
> sideration on habeas corpus. The validity of the
> sentences were found unconstitutional. If this
> position is well taken, it affects the foundation
> of the whole sentencing proceedings. An unconstit-
> utional law is void, and is as no law. An offense
> created by it is not a crime. A conviction under
> it is not merely erroneous, but is illegal and
> void, and cannot be legal cause of imprisonment.
> It is true, if no writ of error or §2255 lies,
> the judgement may be final is the sense that
> there may no means of reversing it. But person-
> al liberty is of so great moment in the eye of
> the law that the judgement of an inferior court
> affecting it is not deemed so conclusive but that
> as we have seen, the question of the court's aut-
> hority to sentence and imprison the party may be
> reviewed on habeas corpus by a judge having auth-
> ority to award the writ. Its authority to sent-
> ence and imprison the petitioner's arose soley
> upon those laws."

Siebold, at 100 U.S. 376-77.

The mere fact that Quenga was mandated under an invalid

and void act to be sentenced under a regime that denied him the

ability to raise claims to have the court consider under a bro-

ader discretionary function, as had been prior to §3553(b)(1)'s

enactment, has denied Quenga his basic constitutional liberties

and right to be sentenced within the boundaries of what the...

27

Fifth and Sixth Amnedments secured. <u>Apprendi,</u> supra; <u>In re Winship</u>, supra. Though it might be within the range of resonableness to leave the sentence standing, undisturbed, it "unquestionably impugns the fairness, integrity, or public reputation of judicial proceedings" to deny petitioner to be sentence under the proper standards. See <u>United States v. Hughes</u>, No: 03-4172, 2005 CLR Vol. 76 No: 17 at 331-332 (4th Cir. 1/24/05.

Had Quenga been able to present his lacking of education, his background under §3553(a), which was denied petitioner because of §3553(b)(1), it is very strongly urged the court would have afforded a different sentence. Since Quenga has yet to be sentence under such an advisory regime, and where excising , §3553(b)(1) retored the laws as it were before that enactment, <u>In re Winship</u>, Supra, movant is entitled to be resentenced in the fairness of justice and constitutional protocols. In, <u>Shepard</u>, the Supreme Court stated that "There is not, however any sufficient justification for upsetting precedent here. We are, after all dealing with an issue of statutory interpretation. See e.g. <u>Taylor</u>, 495 U.S. at 602, and the claim to adhere to case law is generally powerful once a decision has settled statutory meaning, See <u>Patterson v. Mclean Credit Union,</u> 491 U.S. 164, 172-173 (1989) (Considerations of stare decisis have special force in the area of statutory interpretation, for here unlike in the context of constitutional interpretation,

the legislative power is implicated, and congress remains free to alter what we have done". In this instance, time has enhanced even the usual precedential force nearly 15 years haveing passed since <u>Taylor,</u> came down, without any action by Con-

gress to modify the statute as subject to our understanding that

it allowed only a restricted look beyond the record of con-

viction under a nongeneric statute. Shepard v. United States,

No:03-9168. Like Booker, the Supreme Court in Patterson v.,

Mclean Credit Union, 491 U.S. 164, 105 Led. 2d. 132 109 S. Ct.

2363 (1989) interpreted a 123-year old statute differently

than appellate courts had done since its enactment.

As to Patterson's retroactivity the Court said:

> "Ajudicial construction of a statute is an au-
> thoritative statement of what the statute meant
> before as well as after the decision of the case
> giving rise to that construction, thus Patterson
> provides the authoritative interpretation of the
> phrase "make and enforce contracts" in the Civil
> Rights Act of 1866 before the Congressional 1991
> amendment overruling Patterson went into effect
> on November 21, 1991. Patterson's interpretation
> provides the base line for our conclusion that
> the 1991 amendment would be "retroactive" if
> applied to cases arising before this date.

Rivers v. Roadway Express, 511 U.S. 298, 313 128 Led. 2d. 274.

Booker,has arguably made its rules retroactive through the

guideline clarifying amendments. It is well established guide-

line clarifying amendments are retroactive. See e.g. United States,

v. Garcia-Cruz, 40 F. 3d. 986, 990 (9th Cir. 1994). Under the

law of our circuit, amendments to the sentencing guidelines

which are clarifying as opposed to substantive may be given

retroactive effect. See United States v. Stinson, 30 F. 3d. 121

122 (11th Cir. 1994).

29

Dismissal of Quenga's petition for post-conviction relief under jurisdiction granted by §2255 is inappropriate in light of the facts that support Quenga's ineffective assistance of counsel claim. Quenga does not challenge his plea agreement, only the "unknowing and involuntary withdraw of his direct appeal. Quenga's claim of ineffective assistance of counsel is cognizable under §2255.

The Eight Circuit Court of Appeals as well as other circuit courts have held, there is no absolute bar to an ineffective assistance of counsel claim under §2255. Because of counsel's unprofessional, substandard, inadequate, and ineffective assistance provided during the guilt/plea, sentencing, and appeal stages of Quenga's case has caused him to receive an unconstitional sentence that will take extraordinary measures to correct.

Because of the ineffective assistance of counsel involved in Quenga's case the "withdraw" of his direct appeal in unknowing and involuntary manner, this court must assume jurisdiction and or grant Quenga the opportunity to re-file his appeal, in light of Booker, or just grant Quenga relief because counsel was ineffective.

Waivers preserve the finality of judgements and sentences, and are of value to the accused to gain concessions from the government." However, such waivers are not absolute. For example defendants cannot waive their right to appeal an unconstitutional sentence, or a sentence imposed in violation of the terms of the plea agreement." Deroo v. U.S., 223 F. 3d. 919, at 923 (8th Cir. 2000).

30

Quenga's "withdraw" of his appeal was not made in a knowing informed, or intelligent manner because Quenga had no way of knowing that he would not have a chance to file an appeal in the future, the way counsel explained it to him was to "just "withdraw" for now (just for the timebeing). Quenga retained the right to direct appeal §3742, but had no way of knowing that once he "withdrew his appeal" that he would never have the opportunity to re-file his direct appeal. Had he never withdrew his direct appeal he would have been able to file his Booker claim, why on direct appeal which would entitle him to relief.

Simply to reinstate his right to direct appeal (§3742), should be inforced, or to allow Quenga to utilzed §2255 to reenter judgement to allow for the timely notice of appeal necessary for Quenga to appeal his sentence after his attorney failed to do so.

"In reaching it's conclusion that Goddard's later motion was not "second or successive" under AEDPA, the fourth circuit reasoned that "the only purpose of the reentered judgement, prompted by the first §2255 motion, was to put Goddard back in the position he would have been in had his lawyer filed a timely notice of appeal". U.S. v. Orozco-Ramirez, 211 F. 3d. 862, at 870 (5th, Cir. 2000).

As Goddard, Quenga could utilize §2255 to simply vacate and reenter his sentence as a means of providing him his right to appeal (§3742) which he explicitly retained, as an alternative to correcting his sentence under §2255. However this would seem to constitute a serious waste of precious judicial resorces.

31

Quenga has set forth his claim of ineffective assistance of counsel, which in it's totality account for his unconstitutional sentence, and his failure to file an appeal. Quenga is elligible for relief under §2255. "If petitioner can prove that which he has asserted, that is the ineffectiveness of counsel which deprived him of his constitutional rights either by conduct during trial or by failure to advise as to rights on appeal or incorrect and misleading advice as to appeal, he must be granted relief". "The burden of proof as to these allegations, of course, fall on the §2255 petitioner". <u>Powers v. United States</u>, 446 F. 2d. 22, at 24 (5th Cir. 1971).

Quenga has proven the claims of ineffective assistance of counsel set forth in his petition, to a degree, that if not accepted as true by the Court, then the Court must order an evidentiary hearing to allow Quenga the opportunity to prove the facts in his favor on the preponderance of evidence standard.

Quenga has established that he has been prejudiced as a result of the facts and claims he has set forth in that his current 174-month sentence, would have been shorter if not for his lawyer's ineffectiveness. One can only determine from the facts of Quenga's case and the relevant applicable law that this court has jurisdiction over this matter through 28 U.S.C. §2255. The only determination left is whether to vacate Quenga's unconstitutional sentence to: reenter judgement to allow him timely notice of appeal under 18 U.S.C. §3742, which he explicitly retained as of right. Or simply re-sentence Quenga to his correct guideline range (without any enhancements being applied.

32

CORAM NOBIS:            JURISDICTIONAL & VENUE

Petitioner Quenga plead guilty to an information charging
him with felon in possession of firearm, in violation of Title
18, United States Code, Sections 922(g)(1) & 924(a)(2).

Petitioner Quenga brings this action under 28 U.S.C. §1651
All Writs Act- coram nobis. "The Supreme Court and all courts
established by an Act of Congress may issue all writs necessary
or appropriate in aid of their respective jurisdiction and agree-
able to the usages and principles of law." 28 U.S.C. §1651 (a),
Writs. "The writs have been abolished in federal civil practice,
Fed. R. Civ. P. 60 (b), but coram nobis is still available in
criminal matters under the All writs statute, 28 U.S.C. §1651(a).
United States v. Morgan, 346 U.S. 502, 74 S. Ct. 247, 98 Led. 248,
(1954). Puente v. United States, 676 F. 2d. 141, at 145 (FN2) (5th,
Circuit 1982).

Such a motion is a step in the criminal case and not like
habeas corpus were relief is sought in a seperate case and record
the begginning of a seperate civil proceeding. Kurtz v. Moffit,
115 U.S. 487, 494, 6 S. Ct. 148, 149, 29 Led. 458. See United,
States v. Morgan, 346 U.S. 502, at 506, 74 S. Ct. 247, at 250,
98 Led. 248 (FN2) (1954).

The district Court has jurisdiction over this matter petition
for writ of error coram nobis. And this is the proper venue to
hear the matter of Quenga's petition under 28 U.S.C. §1651, coram
nobis, as it is the trial sentencing court in criminal case numb-
er 02-10426.

Quenga has set forth multiple jurisdictional options for this court's consideration in assuming jurisdiction to entertain his petition. The court must assume at least one of the following jurisdictional remedies, as Quenga has shown that any one of which could be construed as being applicable.

In behalf of the unfortunates, federal courts should act in doing justice if the record makes plain a right to relief." United States v. Morgan, 346 U.S. 502, at 505, 74 S. Ct. 247, at 249, 98 Led. 248 (1954). Therefore, in light of all the facts documentation, and relevant law presented within Quenga's petition for post-conviction relief and this memorandum of law the Court must assume jurisdiction over the petition.

Respectfully Submitted,

Joseph Asano Quenga
Federal Correctional Institution
1900 Simler Avenue
Big Spring Texas 79720

34

## CERTIFICATE OF SERVICE

I hereby Certify and declare that a true and accurate copy of the foregoing multi-jurisdictional petition was mailed first class mail on this ___*20*___ day of ___*July*___ 2005, to the following parties below:

Mark E. Kondas
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Herman Cortez Ave.
Hagatna Guam 96910

35

ROBERT E. HARTSOCK
Federal Public Defender
First Hawaiian Bank Building
400 Route 8, Suite 310
Mongmong, Guam 96910
Telephone:    (671) 472-7111
Facsimile:    (671) 472-7120

Attorney for Defendant-Appellant
JOSEPH ASANO QUENGA

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | C.A. NO. 02-10426 |
| | ) | |
| Plaintiff-Appellee, | ) | CR 00-00134 |
| | ) | (District of Guam) |
| vs. | ) | |
| | ) | MOTION TO WITHDRAW APPEAL |
| JOSEPH ASANO QUENGA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

## MOTION TO WITHDRAW APPEAL

Comes now the Defendant, Joseph Asano Quenga, through his court appointed

counsel, Robert E. Hartsock, Federal Public Defender, and moves this Honorable Court to permit

him to withdraw his appeal filed on August 12, 2002. This request is being made after a thorough

review of the pleadings, transcripts and the case file. The Defendant in consultation with his counsel

//

//

has determined that there are no non-frivolous appeal issues which could be appropriately presented to the Court.

Respectfully submitted,

ROBERT E. HARTSOCK
Attorney for Defendant-Appellant

APPROVED:

JOSEPH ASANO QUENGA
Defendant-Appellant

2